[Cite as *State v. Triplett*, 2013-Ohio-5190.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-A-0018** |
| TERRY P. TRIPLETT, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2012 CR 370.

Judgment: Affirmed.

*Thomas L. Sartini,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Joseph A. Humpolick,* Ashtabula County Public Defender, Inc., 4817 State Road, #202, Ashtabula, OH 44004-6927 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Terry Triplett, appeals his conviction, following a jury trial, of five counts of unlawful sexual conduct with a minor. At issue is whether appellant's conviction was supported by sufficient evidence and the weight of the evidence. For the reasons that follow, we affirm.

{¶2} Appellant was indicted for five counts of unlawful sexual conduct with a minor, each being a felony of the third degree, in violation of R.C. 2907.04(A)(B)(3).

Each count alleged that appellant committed the offense between April 1, 2012 and June 18, 2012. Each count alleged that appellant was ten or more years older than the child victim. Appellant pled not guilty and the case proceeded to trial by jury.

{¶3} T.T. testified that at the time of the offenses, she was 14 years old. She was then living with her mother and brother in a house in Ashtabula. She said that she was on a bowling team at a bowling alley in Ashtabula and that appellant was her bowling coach.

{¶4} T.T. testified that on April 12, 2012, appellant asked her to meet him at the library. He picked her up there and took her for a ride on his motorcycle. He took her to an abandoned building on Tannery Hill in Ashtabula. Appellant took T.T. inside the building and had sex with her. In describing this conduct, T.T. said that appellant put his penis inside her vagina. When appellant was through, he dropped her off at the library and TT. walked home alone. Appellant repeated this identical pattern with T.T. on several occasions between April 12, 2012 and May 2012.

{¶5} In May 2012, appellant asked T.T.'s mother if he could move in with them because, he said, he had been "kicked out of his house." T.T.'s mother agreed and appellant moved in with them at that time.

{¶6} T.T. testified her family's home is a single-family residence with three bedrooms upstairs. When appellant first moved in, he would often come upstairs at about 6:00 a.m., after spending the night on the couch in the living room. He would wake T.T. up by knocking on her door. She would let him in and he would get into bed with her. He would then lick her vagina and breasts and have sex with her. Appellant repeated this activity in T.T.'s bedroom many times in May 2012.

2

**{¶7}** T.T. testified that sometimes while she was taking a shower in the upstairs bathroom and the door was locked, appellant would unlock the door with his credit card. He would then come in the bathroom, take off his clothes, get in the shower with T.T., bend her over, and have sex with her.

**{¶8}** T.T. said that appellant also put his fingers inside her vagina. He did this in her bedroom and sometimes he did this downstairs in the living room.

**{¶9}** In late May 2012, T.T. told her friend what appellant had been doing. After talking to her friend, T.T. said she realized what she was doing with appellant was wrong. T.T. told appellant she did not want to have sex with him anymore. He told her if she told anyone what they had been doing, he would kill her and her family. As a result, T.T. was terrified and did not tell anyone else.

**{¶10}** However, appellant continued to have sex with T.T. in her bedroom. She said that her involvement with him was no longer consensual, and appellant started using force to get her to have sex with him. One morning after she had told appellant she no longer wanted to have sex with him, appellant was knocking at her bedroom door. She did not unlock her door. Appellant kicked it in and broke the lock. He then came in her bedroom and had sex with her.

**{¶11}** T.T. said that at some point in June, her friend's mother told T.T's mother about what appellant was doing. T.T. said that she went to the police station with her mother on June 21, 2012. T.T. reported what went on between her and appellant and specifically mentioned his use of force. She said the officer took photographs of her shoulders showing two sucker bites that appellant had given her.

{¶12} T.T. said a detective took her to the Child Advocacy Center in Youngstown. The nurse interviewed and examined her. T.T. said that during all the times appellant had sexual intercourse with her, he never used a condom.

{¶13} T.T. testified she does not know many of the exact dates appellant had sex with her; however, she said appellant had sex with her repeatedly between April 2012 and June 2012. She said the first time appellant had sex with her was on April 12, 2012, in the abandoned building on Tannery Hill. She said that, before going to the police station on Thursday, June 21, 2012, the last time appellant had sex with her was the preceding Monday, June 18, 2012.

{¶14} T.T. said she had sex with appellant voluntarily from mid-April 2012 until the end of May 2012. From the end of May through June 2012, appellant used force against her to get her to submit to sex.

{¶15} Amy Thomas, T.T.'s mother, testified for the state. On direct-examination, she said she has been indicted for child endangering and was awaiting trial. She said she had not been offered any plea deals. She said she was represented by counsel and that, after being advised by the court of her right to remain silent and conferring with her attorney, she decided to waive that right and testifiy.

{¶16} Ms. Thomas testified that in April 2012, she lived with her daughter, T.T., and her son. She said that at that time appellant was 31 years old. She said that T.T. was 14 at that time and appellant knew her age and her grade in school.

{¶17} Ms. Thomas said that she was introduced to appellant as T.T.'s bowling coach. She said he had been T.T.'s coach for about two years. Ms. Thomas said she became friends with appellant and she thought she was his girlfriend. She said that on

4

her birthday, April 12, 2012, appellant came to visit her. She said he told her he was losing his place to stay so she let him move in with her on May 13, 2012. She said she did not know that he and T.T. were having a sexual relationship at that time.

{¶18} Ms. Thomas said that, before appellant moved in, she slept with him on the couch in her living room. She said that after he moved into their house, she resumed sleeping in her bedroom upstairs and he continued to sleep on the couch.

{¶19} Ms. Thomas testified she eventually understood her relationship with appellant had changed. She noticed that he and T.T. were often close to each other and T.T. would sit on his lap. She said she did not do anything to stop their relationship.

{¶20} Ms. Thomas said that on one occasion when she was in her bedroom, she heard T.T.'s headboard banging against the wall in T.T.'s bedroom. She said she knew that T.T. was in her bedroom with appellant at the time because she could hear them talking. She said she waited for appellant to come out of the bedroom. She told him she heard noises in the bedroom. Appellant said she was "hearing things."

{¶21} Ms. Thomas testified that on one occasion, she heard appellant moaning in the upstairs bathroom. She said she knew that appellant was in the bathroom because he went in there to take a shower. She said she also knew that T.T. was in the bathroom at that time because she had seen her enter. After hearing appellant moaning, she just walked past the bathroom and went downstairs without doing anything to stop what they were doing.

{¶22} Ms. Thomas testified that appellant treated T.T. better than he treated her and this bothered her. She said that when she first suspected what was going on between them, she told appellant to leave. However, he refused and said he was not

5

going anywhere. Appellant told Ms. Thomas if she went to the police, he would kill her family. She said she did not call the police because she was afraid for her life and for her family's life.

{¶23} Ashtabula Police Officer Thomas Perry testified that on June 21, 2012, he met Ms. Thomas and T.T., at the police station. They reported that appellant had been staying at their home and that he had been sexually abusing T.T. Officer Perry took statements from Ms. Thomas and T.T.

{¶24} Officer Perry testified he took photographs of T.T. at the station. He said the photos depict two "sucker bites" or "hickeys" on T.T.'s back, which T.T. said appellant had made on her shoulders.

{¶25} Janet Gorsuch, a nurse practitioner at the Child Advocacy Center, testified she performed a medical evaluation of T.T. on July 3, 2012. Ms. Gorsuch said that T.T.'s examination did not reveal any tears or scars to the hymen or vagina. However, she said that most examinations following reports of sexual abuse are normal. This is because after a girl reaches puberty, these organs generally remain intact even if there has been sexual intercourse.

{¶26} Appellant did not present any witnesses or any other evidence on his own behalf. Thus, the state's evidence was undisputed.

{¶27} The jury returned a verdict finding appellant guilty of five counts of unlawful sexual conduct with a minor, with a finding as to each count that appellant was ten or more years older than the victim.

{¶28} The court referred the matter for a presentence report. Appellant has previously been convicted of carrying a concealed weapon in 2000, passing bad checks

6

in 2005, another carrying a concealed weapon offense in 2011, and felony unauthorized use of a motor vehicle in 2013.

**{¶29}** The court sentenced appellant to four years in prison on each of the five counts, each term to be served concurrently to the others, for a total of four years in prison.

**{¶30}** Appellant appeals his conviction, asserting four assignments of error. For his first assigned error, he alleges:

**{¶31}** "Appellant's convictions of unlawful sexual conduct with a minor in violation of Ohio Revised Code 2907.04 were neither supported by sufficient evidence nor by the manifest weight of the evidence."

**{¶32}** An appellate court reviewing the sufficiency of the evidence examines the evidence admitted at trial and determines whether, after viewing the evidence most favorably to the state, the jury could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

**{¶33}** In contrast, the weight of the evidence concerns the inclination of the greater amount of credible evidence offered at trial to support one side of the issue rather than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). If, on weighing the evidence, the jury finds the greater amount of credible evidence sustains the issue that a party seeks to establish, that party will be entitled to its verdict. *Id.* Thus, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed

and a new trial ordered. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14 -*15 (Dec. 23, 1994).

{¶34} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). Hence, the role of a reviewing court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. *State v. Brown*, 11th Dist. Trumbull No. 2002-T-0077, 2003-Ohio-7183, ¶52, citing *Thompkins, supra*, at 390.

{¶35} "Unlawful sexual conduct with a minor" is defined as follows:

{¶36} No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.  R.C. 2907.04(A).

{¶37} According to this definition, the state is *not* required to prove force, threat of force, or lack of consent in order to prove a commission of this offense.

{¶38} Pursuant to R.C. 2907.04(B)(1), unlawful sexual conduct with a minor is a felony of the fourth degree.  However, if the offender is ten or more years older than the other person, unlawful sexual conduct with a minor is a felony of the third degree.  R.C. 2907.04(B)(3).

{¶39} Further, R.C. 2907.01(A) defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse * * * and cunnilingus between persons

8

regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

{¶40} The state presented evidence that appellant committed at least five distinct acts of sexual conduct against T.T. (1) On April 12, 2012, he had vaginal intercourse with her in an abandoned building on Tannery Hill. (2) After he moved into her home, he had vaginal sex with her in her bedroom. T.T.'s mother corroborated this by her testimony that she heard T.T.'s headboard banging against her bedroom wall and she heard them talking. (3) Appellant had oral sex with T.T. in her bedroom. (4) They had vaginal sex in the shower of the upstairs bathroom. T.T.'s mother heard appellant moaning in the shower when both he and T.T. were in the bathroom. (5) Appellant put his fingers in T.T.'s vagina in her bedroom and downstairs in the living room.

{¶41} In support of his sufficiency challenge, appellant argues that T.T. did not testify as to when any of the sexual conduct occurred.

{¶42} However, the state presented substantial evidence regarding the dates of the offenses. T.T. testified appellant first engaged in vaginal intercourse with her in the abandoned building on Tannery Hill on April 12, 2012. She said she remembered this date because that is the date of her mother's birthday. She said the last time appellant had sex with her was on June 18, 2012, three days before she and her mother went to the police. T.T. testified that all of the other acts of sexual conduct were committed between these two dates.

9

{¶43} In any event, exact dates are generally not essential elements of offenses. *State v. Sellards*, 17 Ohio St.3d 169, 171 (1985). Thus, the failure to provide dates in an indictment will not alone provide a basis for dismissal of the charges. *Id.*

{¶44} Ohio courts have repeatedly held that in cases involving the sexual molestation of minor children, the state is not required to provide exact dates because the victims are simply unable to remember such facts, particularly where the repeated offenses take place over an extended period of time. *State v. Lawrinson*, 49 Ohio St.3d 238, 239 (1990); *State v. Barnecut*, 44 Ohio App.3d 149 (5th Dist.1988); *State v. Daniel*, 97 Ohio App.3d 548, 556 (10th Dist.1994); *State v. Mundy*, 99 Ohio App.3d 275, 296 (2d Dist.1994). Although these cases typically involve young children, the foregoing logic has also been applied in cases involving repeated sexual molestation of teenagers who were approximately the same age as T.T. *State v. Darroch*, 11th Dist. Lake No. 92-L-104, 1993 Ohio App. LEXIS 5933, *10 (Dec. 10, 1993); *State v. Robinette*, 5th Dist. Morrow No. CA-652, 1987 Ohio App. LEXIS 5996 (Feb. 27, 1987).

{¶45} Thus, it is well settled that time frames may be used in an indictment rather than exact dates. The Sixth Circuit in *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005), stated:

{¶46} This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements. *See Isaac v. Grider*, 211 F.3d 1269 (6th Cir.2000)(four months); *Madden v. Tate*, 830 F.2d 194 (6th Cir.1987)(six months); *see also Fawcett v. Bablitch*, 962 F.2d 617, 618-19 (7th Cir.1992)(six months); *Hunter v. New*

*Mexico*, 916 F.2d 595, 600 (10th Cir.1990)(three years); *Parks v.*
*Hargett*, 1999 U.S. App. LEXIS 5133 (10th Cir.1999)(17 months).
*Valentine, supra,* at 632.

{¶47} Next, appellant argues the evidence was insufficient because T.T. could not give the exact address of the abandoned building where appellant first had sexual intercourse with appellant. However, appellant fails to cite any authority for this proposition. Without some authoritative foundation to persuade us otherwise, we decline to hold the state was required to prove the exact address of the building to support the conviction. In any event, T.T. testified the building was located on Tannery Hill in Ashtabula. Moreover, Detective Michael Rose testified concerning the exact location of Tannery Hill in Ashtabula and said it was located in Ashtabula County.

{¶48} In support of his manifest-weight challenge, appellant does not argue there were any conflicts in the evidence, which is the usual basis for a manifest-weight challenge. In fact, we note that significant portions of T.T.'s testimony were corroborated by Ms. Thomas, who, in light of the charge pending against her, would have had reason to minimize appellant's culpability. Instead, appellant merely repeats the identical, meritless arguments he raised in support of his sufficiency challenge. In weighing the evidence, we cannot say the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's conviction must be reversed.

{¶49} Appellant's first assignment of error is overruled.

{¶50} For his second assigned error, appellant alleges:

{¶51} "Several pictures that were taken of some marks on the body of [T.T.], the alleged victim in this case by Ashtabula Police Officer Thomas Perry were neither

11

relevant to any of the issues before the trial court; and even if relevant their probative value was substantially outweighed by the dangers of unfair prejudice, confusion of the issues and of its potential to mislead the jurors in this case."

**{¶52}** The decision whether to admit or exclude relevant evidence lies within the discretion of the trial court. *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271 (1991). An appellate court will not reverse that decision absent an abuse of discretion and a showing of prejudice. *Id.*

**{¶53}** "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. However, although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Evid.R. 403(A).

**{¶54}** Appellant does not challenge T.T.'s testimony that appellant gave her sucker bites. Instead, he argues the two police photographs showing the sucker bites on her back were irrelevant because he was not charged with a separate offense for giving her the sucker bites.

**{¶55}** However, although appellant was not charged with assault as a result of these sucker bites, because T.T. testified that appellant gave her sucker bites, the photographs were relevant to corroborate her testimony. Further, the photos were relevant to prove the sexual nature of their relationship.

**{¶56}** Alternatively, appellant argues that, even if the photos were relevant, they distracted the jury's attention from the main issue in this case, which was whether

12

appellant had sex with T.T. on several occasions between April 12, 2012 and June 18, 2012. In support, appellant argues that T.T. did not specifically testify that appellant gave her these bruises during an occasion of sexual intercourse. In any event, the photos of the sucker bites evidenced the sexual nature of appellant's relationship with T.T. Moreover, only two photos were involved and neither was graphic. Thus, the relevance of these photos outweighed any danger of unfair prejudice.

{¶57} Appellant's second assignment of error is overruled.

{¶58} For his third assigned error, appellant alleges:

{¶59} "Appellant's constitutional rights to due process of law were violated when he went to trial and was convicted of five identically worded counts of unlawful sexual conduct with a minor in violation [of] Revised Code 2907.04 that did not put him on notice as to what he was alleged to have done in violation of the law."

{¶60} Appellant argues that he was denied due process because the indictment charged him with five identically-worded offenses with no distinctions as to each so that he was not on notice of the offenses with which he was charged. We note the state misconstrues appellant's argument, and incorrectly states his argument is based on the state's failure to prove the exact dates of the charged offenses. Thus, the state does not properly address this assignment of error.

{¶61} The United States Supreme Court has held that an indictment is only sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant notice of the charges, and (3) protects the defendant against double jeopardy. *Hamling v. United States*, 418 U.S. 87, 118 (1974).

13

{¶62} In support of his argument, appellant relies on *Valentine, supra*. In that case, the defendant was charged in a 40-count indictment with sex abuse against his eight-year-old stepdaughter. The first 20 counts charged him with child rape. Each of those counts was identically-worded with no differentiation among any of them. The defendant was also charged with 20 counts of felonious sexual penetration and each such count was also identically worded. The Sixth Circuit in *Valentine* specifically noted, "[t]he prosecution did not distinguish the factual bases of these charges in the indictment, *in the bill of particulars, or even at trial*." (Emphasis added.) *Id.* at 628. The court noted that the only evidence as to the number of offenses was provided by the testimony of the child victim, who described the abuse as fellatio, digital penetration of her vagina, and anal penetration, and estimated that each occurred "about 20 times, "about 15 times," and "about 10 times," respectively.

{¶63} The Sixth Circuit in *Valentine* stated that the prosecution did not provide the factual bases for the 40 separate criminal offenses that took place. The court stated that, since the 40 counts were not tied to 40 distinguishable crimes, Valentine was unable to defend himself. The Sixth Circuit reiterated: "*The indictment, the bill of particulars, and even the evidence at trial* failed to apprise the defendant of what occurrences formed the bases of the criminal charges he faced." *Id.* at 634. Instead, the court stated that he was prosecuted and convicted for a generic pattern of abuse, rather than for 40 separate abusive incidents.

{¶64} The Sixth Circuit stated how the problems presented by the indictment in *Valentine* could have been cured:

14

**{¶65}** *The due process problems in the indictment might have been cured had the trial court insisted that the prosecution delineate the factual bases for the forty separate incidents either before or during the trial.*

**{¶66}** * * *

**{¶67}** To be sure, differentiation will often require reference to date ranges or time ranges or certain locations or certain actions. But, differentiation does not require overly-burdensome precision. (Emphasis added.) *Id.* at 634, 637.

**{¶68}** Finally, the Sixth Circuit in *Valentine* held that the deficient indictment could not disturb Valentine's conviction of one count of rape and one count of felonious sexual penetration because the prosecutor had presented evidence of such crimes of which Valentine had notice and an opportunity to defend. *Id.* at 637.

**{¶69}** Applying the foregoing analysis here, while the five counts in the indictment are identically-worded, the bill of particulars distinguished the offenses with which appellant was charged. A bill of particulars is meant to set forth specifically the nature of the offense charged and of the conduct of the defendant alleged to constitute the offense. Crim.R. 7. The purpose of a bill of particulars is to elucidate or particularize the defendant's conduct which is alleged to constitute the offense. *Sellards, supra*, at 171.

**{¶70}** Count One of the bill of particulars provided: "Between the dates in question Defendant engaged in sexual conduct with the victim, date of birth 03/08/98, in a room in the victim's home, other than the bathroom." Count Two of the bill of

particulars provided: "Between the dates in question the defendant engaged in sexual conduct with the victim in the bathroom of the victim's home." Count Three provided: "The defendant and the victim engaged in sexual conduct, specifically oral sex in the victim's home." Count Four provided: "The Defendant digitally penetrated the victim's vagina." Count Five provided: "The defendant and the victim engaged in sexual conduct in an abandoned building in Ashtabula County, around her mother's birthday."

{¶71} In addition, the trial testimony of the victim and her mother distinguished each of the charged offenses from the other.

{¶72} We therefore hold the state delineated the factual basis for each offense before trial in the bill of particulars and during trial in the trial testimony. *Valentine, supra*, at 634. The state thus cured any due process problems in the indictment. *Id.*

{¶73} Appellant's third assignment of error is overruled.

{¶74} For his fourth and final assignment of error, appellant alleges:

{¶75} "Appellant's rights were violated by remarks made by assistant county prosecutor Cecilia Cooper during rebuttal argument in which she referred to appellant as a predator."

{¶76} Appellant argues the trial court should have granted his motion for a mistrial based on alleged prosecutorial misconduct. The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudiced the defendant. *State v. Smith*, 14 Ohio St.3d 13, 15 (1984). Generally, prosecutorial misconduct is not a basis for overturning a conviction, unless, on the record as a whole, the misconduct deprived the defendant of a fair trial. *State v. Dudas*, 11th Dist. Lake Nos. 2008-L-109 and 2008-L-110, 2009-Ohio-1001, ¶26. We review the trial court's

16

decision to grant or deny a motion for mistrial for an abuse of discretion. *State v. Treesh,* 90 Ohio St.3d 460, 480 (2001).

{¶77} During the state's rebuttal argument, the state commented on the reason Ms. Thomas allowed appellant to move into her home. The state argued that, while Ms. Thomas was not a model mother, she was "susceptible to the predator that is Terry Triplett." The argument was based on Ms. Thomas' testimony that she suffers from anxiety, depression, and bipolar disorder; that she takes medication for these illnesses; and that she allowed appellant to move in because he needed a place to stay and she thought she was his girlfriend. This argument was thus based on the evidence and was not improper. However, even if it was improper, it was isolated, brief, and not egregious. Thus, it was not prejudicial. In any event, the court sustained appellant's objection, struck the comment from the record, and instructed the jury to disregard it. We presume the jury followed the court's instructions. *State v. Griesmar,* 11th Dist. Lake No. 2009-L-061, 2010-Ohio-824, ¶32. As a result, the trial court did not abuse its discretion in denying appellant's motion for mistrial.

{¶78} Appellant's fourth assignment of error is overruled.

{¶79} For the reasons stated in this opinion, the assignments of error are overruled. It is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.


DIANE V. GRENDEL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

17