[Cite as *State v. Beckwith*, 2014-Ohio-2877.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-A-0050** |
| ANDREW F. BECKWITH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2012 CR 726.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Ariana E. Tarighati,* Law Offices of Ariana E. Tarighati, L.P.A., 34 South Chestnut Street, #100, Jefferson, OH 44047-1092 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Andrew F. Beckwith, appeals his conviction of felonious assault, following a jury trial, in the Ashtabula County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} Appellant was indicted for felonious assault by causing serious physical harm to Michael Kutner, a felony of the second degree, in violation of R.C. 2903.11. Appellant pled not guilty and the case was tried to a jury.

{¶3} Michael Kutner testified that on September 25, 2012, at about 11:00 p.m., he went to the Town Tavern, a restaurant/bar in Andover, Ohio, with his roommate, Ed Yasher, and Yasher's girlfriend, to play pool, play music on the jukebox, and to have a few beers.

{¶4} Kutner said that, sometime later, he saw appellant enter the bar with a few of his friends. Kutner had previously met appellant through a past girlfriend, Jennifer Alexander, who Kutner dated from October 2011 through July 2012. Kutner said that he and appellant did not get along due to an argument they had over Alexander when they started dating. Kutner said that after he and Alexander broke up, he spoke to appellant a few times, but they never resolved the problem they had with each other.

{¶5} Near midnight, while Kutner was playing pool at the bar, Tim Ballentine, who Kutner knew from the area, walked over to Kutner and started talking to him. While they were talking, appellant approached them. Appellant grabbed Kutner's pool stick out of his hand, threw it across the pool table, and started shouting about Alexander and accusing Kutner of talking about him.

{¶6} Kutner testified he told appellant that he, Kutner, did not know what appellant was talking about and that he was just there to play pool with his roommate. Appellant then punched Kutner in the face. Kutner was taken to the emergency room at St. Joseph Hospital in Andover. After it was determined that Kutner required surgery, he was taken to St. Elizabeth Hospital in Youngstown.

{¶7} Kutner said that, due to appellant's attack, his jaw was broken, his sinus cavity was broken, and he lost one of his front teeth. In surgery, three plates had to be inserted in his face. Also, his mouth was wired shut for one month. Kutner said that

2

one year after this attack, he still experiences severe pain in his jaw every day. Kutner said he requires dental reconstruction because several teeth on the bottom left side of his mouth have been damaged. He has also developed painful arthritis in his face and jaw.

{¶8} Kutner testified that, prior to this confrontation that night, he had not made any threats against appellant or harassed him in any way. He said he did nothing to provoke this assault. He said that at the time of the assault, his keys were on his belt loop and he had cigarettes, a lighter, and some money, but he did not have any type of knife on him.

{¶9} A video taken by the bar's video surveillance system was identified by Kutner and admitted in evidence. It shows Kutner still holding his pool cue engaging in a friendly conversation with Ballentine near the pool table. The video shows appellant walking up to Kutner while he is still talking to Ballentine. Appellant immediately grabs Kutner's pool stick out of his hand and throws it across the pool table. Appellant is yelling at Kutner in an angry and aggressive manner while making large, threatening arm movements and pointing his finger in Kutner's face. Appellant then hits Kutner in the chest with both open hands and Kutner falls back several feet. Kutner steps forward, but does not make any aggressive movements. While Kutner is talking to him, appellant appears angry and highly agitated and punches Kutner twice in the face. Kutner falls backwards from the punches, and appellant jumps on him and punches him again. While Kutner is on the ground, appellant gets up, walks away, and exits the bar. The video shows Kutner made no aggressive moves toward appellant at any time.

{¶10} Ed Yasher testified that on September 26, 2012, he, his girlfriend, and his roommate, Michael Kutner, went to the Town Tavern to play pool. While Ed was talking to some people, he noticed appellant and Kutner arguing. He said appellant punched Kutner, who then fell backwards onto the floor. Appellant then left the bar. Yasher went over to Kutner and picked him up. Kutner's face was bruised and bleeding. Yasher took him to the hospital.

{¶11} Laurie Inman, a registered nurse at St. Joseph Hospital Emergency Diagnostic Center in Andover, testified that on September 26, 2012, at about 1:00 a.m., Michael Kutner was transported to the emergency room complaining that he had been assaulted. He had facial injuries in the mouth area and a large amount of bleeding from his face. He was in a great deal of pain. He had a CAT scan, which revealed he had multiple fractures to the jaw. Nurse Inman called the Andover Police Department reporting they had a patient who had been assaulted. Due to the severity of his injuries, Kutner was transferred by ambulance to St. Elizabeth's Trauma Center in Youngstown.

{¶12} Michael Pascolini, M.D., an ear, nose, and throat specialist employed by St. Elizabeth's Health Center, testified that in the early morning hours of September 26, 2012, he examined Michael Kutner at the hospital. He said that Kutner was in a lot of pain and distress from the fracture of his jaw. Kutner told him he was hit in the face and then hit the floor.

{¶13} Kunter had difficulty opening his mouth, which indicated a fracture of the jaw, and a large open wound in his oral cavity caused by the breaking of the bones inside that cavity. A CAT scan revealed Kutner sustained three fractures to the jaw, one

4

to the right side of the jaw, one to the left side, and another to the back part of the jaw, which had been pushed up toward his skull. His sinus cavity was also fractured.

{¶14} Dr. Pascolini performed surgery to repair Kutner's jaw. The doctor made several incisions in the oral cavity to get to the fractures. He also had to make incisions into the muscle to relax Kutner's jaw in order to realign the upper and lower parts of the jaw. He then inserted screws into both parts of the jaw and wired them together to hold the jaw in place. Kutner's jaw had to be immobilized for four weeks while the bone was healing. Dr. Pascolini also inserted three titanium plates in Kutner's jaw to stabilize the bones affected by the fractures. After the bone healed, Dr. Pascolini performed a second surgery to remove the screws and wire from Kutner's jaw so he could once again move his mouth. The plates in Kutner's jaw remain in place and are permanent.

{¶15} Sergeant Christopher Baker of the Andover Police Department testified that on September 26, 2012, at about 2:00 a.m., Nurse Inman at St. Joseph's emergency room called him. She said there was an assault that night at the Town Tavern and the victim was in the emergency room. She requested a police officer to meet him.

{¶16} Sergeant Baker said he went to St. Joseph's emergency room. He met Kutner and saw he was bleeding from the mouth. One of his teeth had been knocked out of place and Sergeant Baker could see his gum line under the tooth. Kutner had difficulty speaking due to the injuries to his mouth. He provided the name of the assailant.

{¶17} Sergeant Baker said that in the course of his investigation, he interviewed Ed Yasher, Sandra Soderstrom, and Kutner, but that no one else who had been at the Town Tavern that night ever came forward to say they had witnessed the incident.

{¶18} Sergeant Baker said that later that night, he met with the manager of the Town Tavern. The sergeant is familiar with the bar and knew they have a video surveillance system consisting of eight video cameras set up inside the bar. He asked to see the video of the assault in the bar that night and the manager showed it to him.

{¶19} After the state rested its case, the defense presented several witnesses who testified on appellant's behalf. Sandra Soderstrom, bartender at the Town Tavern, testified that on September 26, 2012, she saw Kutner talking to appellant at the pool table. She said appellant took the pool stick from Kutner and threw it. She heard them arguing about a girl. Appellant then hit Kutner. She saw Kutner fall to the floor and she picked him up. She said that, before seeing them talking to each other at the pool table, she did not see any contact between them that night.

{¶20} Jerry Connolly testified he knows appellant from the bar and met him there several times. He said that before Kutner was attacked, Kutner brought him into the bathroom and said he would have to take appellant's side or his side. Connolly also said he had previously seen a clip in Kutner's pocket, which he assumed was attached to a knife in Kutner's pocket, but he never saw a knife because Kutner never took it out.

{¶21} Katie French, a longtime friend of appellant, said that appellant has a reputation for being peaceful, but that she has previously seen him involved in a fight over a girl in another bar. In contrast, she said Kutner does not have a reputation for being peaceful, but added that he can be "nice" and has always been nice to her.

6

{¶22} Tim Ballentine, another longtime friend of appellant, testified that on September 26, 2012, he was at the Town Tavern with appellant. Ballentine said that at some point while he and appellant were sitting at the bar, Kutner walked passed them and said to appellant that he was "going to beat [his] ass tonight with a pool stick." He said that appellant did not respond to this, and he and appellant just continued relaxing, talking to each other, and having a good time. Ballentine said he later approached Kutner, told him he was not to assault appellant, and then walked away.

{¶23} However, to the contrary, the video shows Kutner and Ballentine engaging in a friendly conversation over an extended period and that Ballentine was still talking to Kutner when appellant interrupted them, grabbed the pool stick from Kutner's hand, and threw it across the pool table.

{¶24} Ashley Smith, another close friend of appellant, testified that a few weeks before the assault on Kutner, she was at the Town Tavern when Kutner offered to pay her $20 to punch appellant in the face.

{¶25} Jennifer Alexander, a close friend of appellant, testified she was Kutner's girlfriend from October 2011 to July 2012. She said that in about January 2012, she saw Kutner go to appellant's car and remove his car antenna. She said she never saw Kutner do anything else to appellant and she never saw Kutner threaten appellant. She also said that while she and Kutner were dating sometimes he carried a knife.

{¶26} Appellant testified he met Kutner the same night Kutner met Alexander. He said he and Kutner had a disagreement and, ever since, they have not gotten along. He said he believes that in the past, Kutner has slashed his tires and tried to run him off

the road, but admitted he never witnessed Kutner doing any of these things and he never reported any of these incidents to the police.

{¶27} Appellant said that, prior to September 26, 2012, Kutner often made negative comments about him in public places that were not directed to him but were loud enough for him to hear, and he considered this to be harassment.

{¶28} Appellant said that in the past he saw the shape of a knife in Kutner's pocket and assumed it was a knife, although he never saw a knife on Kutner.

{¶29} Appellant said that on September 26, 2012, while he was seated at the bar, Kutner walked by him and said he was going to "whoop [his] ass with a pool stick." However, although eight video cameras were set up in the bar, no video was introduced showing that Kutner had any prior encounters with appellant before the attack.

{¶30} Appellant said that as a result of this threat, about one hour later, he walked over to Kutner "to confront him." Appellant told Kutner this needs to stop now and he took Kutner's pool stick from him and threw it. Appellant said he then pushed Kutner because he felt threatened since Kutner was, according to him, fumbling around in his pocket and Kutner was known to carry a knife.

{¶31} Appellant said that when Kutner got up, he reached into his pants pocket and pulled out an object that may have been a knife and then put it in the pocket of his sweatshirt. As a result, appellant punched Kutner so hard he fell to the floor. Appellant admitted the video does *not* show Kutner reaching into his pocket, taking any object out of it, or placing any object in his sweatshirt pocket. In addition, on cross-examination, appellant admitted that Kutner never lifted his hand to strike him and did not have anything in his hands when appellant punched him.

8

**{¶32}** The jury found appellant guilty of felonious assault. The court referred the matter for a presentence report. That report shows that appellant is an alcoholic and admitted he was under the influence of alcohol at the time of the offense. Further, in 2009, appellant was diagnosed as bipolar with mood disorder and prescribed medication by a psychiatrist. However, he voluntarily stopped treatment and stopped taking his medication.

**{¶33}** Appellant told the court that he was ashamed of his actions that night and that he knows putting his hands on people is never the answer. He admitted that he was drunk during this incident; that "alcohol had a great bearing on [his] judgment that night;" and that he has an alcohol problem. The trial court noted that, due to appellant's assault, Kutner suffered serious injuries and will have painful arthritis in his jaw for the rest of his life. Further, the court noted that appellant was the aggressor. He got off his bar stool, walked half the distance of the bar to the pool area, and confronted Kutner. Appellant took the pool cue away from him. While the victim was talking to him, appellant was very animated, moving his arms and threatening. Appellant then pushed Kutner. After Kutner got up, appellant punched him two or three times with such force that it broke his jaw and sinus cavity. The court noted that, while appellant said Kutner was fiddling with his pockets and he was known to carry a knife, the video clearly shows his hands never touched his pockets. The court noted that, despite appellant's history with Kutner over Alexander, words never justify an assault. The court sentenced appellant to three years in prison.

**{¶34}** Appellant appeals his conviction, asserting two assignments of error. For his first assigned error, he alleges:

9

**{¶35}** "The repeated instances of prosecutorial misconduct affected defendant-appellant's substantial right to a fair trial in violation of his Sixth and Fourteenth Amendment rights."

**{¶36}** The test for prosecutorial misconduct is whether the remarks of the prosecutor were improper and, if so, whether they prejudiced the defendant. *State v. Triplett*, 11th Dist. Ashtabula No. 2013-A-0018, 2013-Ohio-5190, ¶76, citing *State v. Smith*, 14 Ohio St.3d 13, 15 (1984).

**{¶37}** "'Generally, prosecutorial misconduct is not a basis for overturning a criminal conviction, unless, on the record as a whole, the misconduct can be said to have deprived the defendant of a fair trial.'" *State v. Dudas*, 11th Dist. Lake Nos. 2008-L-109 and 2008-L-110, 2009-Ohio-1001, ¶26, quoting *State v. Hillman*, 10th Dist. Franklin Nos. 06AP-1230 and 07AP-728, 2008-Ohio-2341, ¶26. "An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant." *State v. Bruce*, 8th Dist. Cuyahoga No. 70982, 1997 Ohio App. LEXIS 4334, *19 (Sept. 25, 1997). "In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury would have found the appellant guilty." *Id*. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. *Id*.

**{¶38}** Further, allegations of prosecutorial misconduct which are not raised below are waived on appeal, absent plain error. *Dudas*, *supra*, at ¶33.

**{¶39}** The general rule regarding waiver is that "'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment

could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'" *State v. Awan*, 22 Ohio St.3d 120, 122 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus. Likewise, "'[c]onstitutional rights may be lost as finally as any others by a failure to assert them at the proper time.'" *Awan*, *supra*, quoting *Childs*, *supra*, at 62. Such challenge must be raised at the first opportunity and, in a criminal prosecution, this means in the trial court. *Awan*, *supra*.

{¶40} Crim.R. 52(B) allows us to correct "[p]lain errors or defects affecting substantial rights" that were not brought to the attention of the trial court. However, "'[p]lain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise.'" *Dudas*, *supra*, quoting *State v. Moreland*, 50 Ohio St.3d 58, 62 (1990).

{¶41} The appellate court's decision to correct a plain error is discretionary and should be made "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶42} While appellant argues on appeal that the prosecutor engaged in certain instances of prosecutorial misconduct, he never objected to any of them below. As a result, appellant waived any challenge based on prosecutorial misconduct unless the conduct rose to the level of plain error.

{¶43} First, appellant argues the prosecutor improperly questioned Yasher concerning whether appellant had vandalized Kutner's property and had threatened and harassed him. However, to the contrary, the prosecutor merely asked Yasher what

appellant and Kutner had told him about acts of vandalism, threats, and harassment. In light of appellant's accusations against Kutner, we perceive no error in such question.

{¶44} Next, appellant challenges the prosecutor's question to Sergeant Baker concerning whether he had any information regarding appellant's peacable nature. This question was simply aimed at impeaching the testimony of appellant's friends that appellant was a peaceful person. In any event, when Sergeant Baker was about to say what he had been told, defense counsel objected and the court sustained the objection as eliciting hearsay. Thus, any error in this question was effectively cured.

{¶45} The prosecutor next asked Sergeant Baker if anyone had reported any tire slashings or car chases, and the officer said there were no such reports. The prosecutor obviously asked this question to impeach appellant's trial testimony that Kutner had engaged in these activities.

{¶46} Next, appellant argues the prosecutor improperly elicited from Sergeant Baker his testimony that appellant chose not to make a statement. Appellant's counsel did not object to the prosecutor's question. Instead, counsel allowed this testimony to come in, and he used it as a basis to attack the reliability of Sergeant Baker's investigation. Subsequently, defense counsel questioned appellant during his direct testimony concerning why he chose not to make a statement. Through his questioning, defense counsel sought to show that appellant was always willing to cooperate and that Sergeant Baker had numerous opportunities to ask him to give a statement, but repeatedly delayed in doing so. While the prosecutor's initial question was improper, defense counsel's failure to object to it, coupled with appellant's direct testimony on this subject, removed any potential for prejudice.

12

{¶47} In any event, the evidence here was overwhelming. The entire incident was caught on video. Despite the conflicting version of events offered by appellant's friends, the video shows that Kutner did not do anything to provoke the assault; he did not put his hands in his pockets before being hit; and appellant was the aggressor. The trial court's comments at sentencing regarding the video are apropos:

{¶48} The defendant during the trial asserted a defense of self-defense. * * * [B]ut this tavern had a security system with eight cameras in it; and the Jury actually viewed the crime in this case, because this whole situation was caught on tape from beginning to end. There is no doubt about what happened. This court did not have to rely on the statements of six or eight people that might have been sitting in there drinking all night, six or eight people that had friends on one side of this fight or the other. This Jury was there. They saw what happened, and what happened was clear.

{¶49} * * *

{¶50} But it's clear, Mr. Beckwith, you were the aggressor in this. You got off your bar stool, you walked about half the distance of the bar down to the pool area. You confronted the victim in this case. You took a pool cue away from him. He talked to [you]. You were very animated, moving your arms and threatening. Finally you pushed him off the camera. He got up. He came back on to the camera. He was standing there.

13

{¶51} Your testimony was that he was fiddling with his pockets and he was known to carry a knife and you thought you were in harm's way. You could see on this tape, his hands never touched his pockets.

{¶52} * * *

{¶53} [H]e didn't come anywhere near you, and you came back, sought him out, confronted him, took his pool cue away, pushed him, and then you punched him two or three times, then he went off the camera.

{¶54} In light of the overwhelming evidence of appellant's guilt, we cannot say that, but for the few isolated instances of the state's alleged improper questions, the jury would not have found him guilty. We therefore do not discern plain error.

{¶55} Appellant's first assignment of error is overruled.

{¶56} For appellant's second assigned error, he contends:

{¶57} "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

{¶58} Appellant argues that, while his conviction may have been supported by sufficient evidence, he is entitled to a new trial because the evidence offered by the state was so lacking in credibility that no reasonable jury would have found him guilty of felonious assault.

{¶59} A challenge to the weight of the evidence challenges the credibility of the evidence presented. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). If, on weighing the evidence, the jury finds the greater amount of credible evidence sustains the issue that a party seeks to establish, that party will be entitled to its verdict. *Id.* Thus,

14

a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-*15 (Dec. 23, 1994).

{¶60} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). Hence, the role of a reviewing court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. *State v. Brown*, 11th Dist. Trumbull No. 2002-T-0077, 2003-Ohio-7183, ¶52, citing *Thompkins*, *supra*, at 390.

{¶61} Appellant argues that because he testified Kutner told him he was going to kick his ass and, after appellant pushed Kutner, appellant allegedly saw Kutner reach into his pocket and thought Kutner had a knife, he reasonably believed he had the right to strike Kutner in order to defend himself. However, appellant ignores Kutner's testimony that he never threatened appellant that night and that he did not have a knife. Moreover, appellant ignores the fact that, as he conceded at trial, the video does not show Kutner put his hand in his pocket. Significantly, appellant also ignores the fact that the video, which photographed the entire incident, does not show Kutner took any aggressive action, even after appellant grabbed his pool cue away from him and pushed him.

15

{¶62} As the trier of fact, the jury was entitled to find Kutner's testimony to be more credible than appellants' witnesses, which the jury obviously did. Based upon our review of the record, we cannot say that in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶63} Appellant's second assignment of error is overruled.

{¶64} For the reasons stated in this opinion, appellant's assignments of error lack merit and are overruled. It is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, J.,

COLLEEN MARY O'TOOLE, J.,

concur.