[Cite as *State v. Wrona*, 2018-Ohio-632.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 1-17-22

    v.

DENNIS WRONA,                      O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2016 0248

**Judgment Affirmed**

Date of Decision:   February 20, 2018

APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *Jana E. Emerick* for Appellee

**ZIMMERMAN, J.**

{**¶1**} Defendant-Appellant, Dennis Wrona ("Appellant"), brings this appeal from the Allen County Common Pleas Court, convicting him of one count of assault and sentencing him to two years Community Control. On appeal, Appellant asserts that: 1) the trial court erred by depriving Appellant of his right to trial by jury by refusing a requested instruction to the jury as to self-defense; 2) the Appellant's jury waiver was not made voluntarily; and 3) the Appellant's conviction for assault was against the manifest weight of the evidence. For the reasons that follow, we affirm the ruling of the Allen County Court of Common Pleas.

*Factual Background*

{**¶2**} At approximately 5 p.m. on May 29, 2016, employees working at a Bob Evans restaurant on North Cable Road in Lima, Ohio noticed a man "passed out" and lying face down in the grass outside of the restaurant. (Trial, 02/27/2017 Tr. at 28). When attending to the man, who was later identified as Appellant, restaurant employees noted that the man was responsive. (*Id.* at 29). The employees assisted Appellant into the restaurant, gave him a glass of water, and called 9-1-1 for assistance. (*Id.*). The Allen County's Sheriff's Office (the department that received the 9-1-1 call) contacted the Lima City Police Department, and dispatched the Lima Allen County Paramedics ("LACP") to the scene to provide Appellant medical

assistance. (*Id.* at 17; 22). Jennifer Pierce ("Pierce") and Linda Bishop ("Bishop"), were the EMTs dispatched to Bob Evans. (*Id.* at 59).

{¶3} Upon arriving at Bob Evans, Pierce and Bishop met with the Appellant. (*Id.* at 64). Appellant told the EMTs that the person who had "passed out" in the grass had already left the restaurant. (*Id.*). However, after talking to Bob Evans employees, Pierce and Bishop determined that the Appellant was the individual who had "passed out" outside of the restaurant. (*Id.*). Nevertheless, Appellant refused treatment, but did agree to being "checked out" in the ambulance as long as its doors remained opened and that he would not be transported to the hospital. (*Id.* at 66). While reports differ as to whether Appellant stepped up into or fell into the back of the ambulance, it is not disputed that once inside the ambulance a physical altercation occurred between the Appellant and Pierce. (*Id.* at 76). As a result of the altercation, Pierce "flew" out of the back of the ambulance, landing on her backside. (*Id.* at 76-77).

{¶4} After being thrown from the ambulance, Pierce radioed for police assistance, then returned to the ambulance to assist Bishop in restraining Appellant until law enforcement arrived. (*Id.* at 78). One of the responding officers, Steven Torres ("Torres") of the Lima City Police Department, reported that the Appellant's eyes were bloodshot and glassy. (*Id.* at 156). Torres also reported that the Appellant had an odor of alcohol coming from his breath and appeared to have urinated on

himself. (*Id.*). Torres reported that based on his observations (of Appellant) and experience, he believed Appellant was intoxicated. (*Id.*). Appellant denied being intoxicated, and no breath or blood alcohol testing was performed by law enforcement to determine whether or not Appellant was under the influence of alcohol. (Trial, 02/28/2017 Tr. at 186). However, Torres arrested the Appellant for assaulting Pierce and transported him to the Lima police station without further incident. (Trial, 02/27/2017 Tr. at 171-72).

{¶5} After the altercation with the Appellant, Pierce sought medical treatment for her injuries. (*Id.* at 91). Pierce testified that as a result of being kicked out of the back of the ambulance, she suffered severe pain in her right hip/pelvis region. (*Id.* at 92). Pierce also testified that Appellant had bit her and attempted to light her arm hairs on fire with a lighter that Appellant had in his shirt pocket. (*Id.* at 81). Pierce's injuries were documented at trial by medical records from St. Rita's Medical Center and photographs taken by police. (State's Ex. Nos. 5-18).

### *Procedural Background*

{¶6} On July 14, 2016, the Allen County Grand Jury indicted Appellant on one count of Assault, in violation of R.C. 2903.13(A) and R.C. 2903.13(C)(5). (Doc. No. 4). Because the victim of the assault, Pierce, was performing an emergency medical service in the course of her official duties, the charge against the Appellant was elevated to a felony of the fourth degree. (*Id.*).

-4-

{¶7} After several continuances, a jury trial was scheduled in the trial court for February 27, 2017. (Doc. No. 24). However, Appellant waived his right to a jury the morning of trial after an in-chamber meeting occurred between the trial judge and the attorneys involved in the case. (Doc. No. 56). Appellant's jury waiver was in writing and was signed (by Appellant) in open court and on the record. (*Id.*). After the waiver was executed, a bench trial commenced. During the bench trial, Appellant's counsel's office faxed to the trial court a "Pretrial Statement Re: Self Defense and Refused Medical Treatment." (Doc. No. 51). At the conclusion of the bench trial on February 28, 2017, the trial court found Appellant guilty of assault. (Doc. No. 57). Thereafter, Appellant was sentenced to two years of community control on April 20, 2017. (Doc. No. 60). It is from this judgment Appellant appeals, presenting the following assignments of error for our review:

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED AND DEPRIVED MR. WRONA OF HIS RIGHT TO TRIAL BY JURY BY REFUSING A REQUESTED INSTRUCTION TO THE JURY AS TO SELF-DEFENSE.**

### ASSIGNMENT OF ERROR NO. II[1]

**THE JURY WAIVER WAS NOT VOLUNTARY.**

---

[1] While Appellant inconsistently labels his second assignment of error as his third assignment of error in his brief, we address the second assignment of error in accordance with its logical numerical designation.

## ASSIGNMENT OF ERROR NO. III

**THE CONVICTION FOR ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶8} On appeal, Appellant asserts: 1) that the trial court erred by depriving Appellant of his right to a trial by jury and by refusing the requested self-defense jury instruction; 2) that the Appellant involuntarily executed his jury waiver, and 3) that Appellant's conviction for assault was against the manifest weight of the evidence. For the reasons that follow, we affirm the decision of the trial court.

*Appellant's First and Second Assignments of Error*

{¶9} As both the first and second assignments of error involve Appellant's right to a jury trial and the voluntariness of his jury waiver, we will discuss these assignments together.

*Standard of Review*

{¶10} "A jury waiver must be voluntary, knowing, and intelligent." *State v. Osie,* 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 45 citing *State v. Ruppert,* 54 Ohio St.2d 263, 271, 375 N.E.2d 1250 (1978). "Waiver may not be presumed from a silent record." *Id.* citing *State v. Foust,* 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 52. "However, if the record shows a jury waiver, the verdict will not be set aside except on a plain showing that the waiver was not freely and intelligently made." *Id.* "Moreover, a written waiver is presumptively voluntary, knowing, and intelligent." *Id.*

*Trial Court's Conversation with Appellant Regarding Waiver*

{¶11} At Appellant's jury waiver hearing, the following exchange occurred between Appellant and the trial court:

**Trial Court: Mr. Wrona, you've heard what your lawyer said about waiving your right to a jury trial?**

**Appellant: I did, your honor.**

**Trial Court: Okay. Thank you. Now, Mr. Wrona, I want to make sure you understand a bit of detail relating to that. First of all, you have a constitutional right to a trial by jury; you understand that?**

**Appellant: Yes, I do.**

**Trial Court: Do you understand also that's guaranteed to you by both the constitution of the United States of America and the Constitution of the State of Ohio?**

**Appellant: Yes, sir.**

**Trial Court: Do you further understand that in accordance with that constitutional right you have certain protections relating to the selection of the jury, for example. First of all, your lawyer gets to question the proposed jury or the potential jurors to see if he can garner as best as possible a fair and impartial jury, keeping your interest in mind; do you understand that?**

**Appellant: I do.**

**Trial Court: Do you-do you understand you'll be giving that up if you waive your right to a jury?**

**Appellant: Yes, I do your honor.**

**Trial Court: Do you also understand that if there are indications that a juror may have a preconceived idea of the case or have an indication that, for example, he wouldn't follow the law or follow**

**what the rules of the court are your lawyer could excuse him for what's called cause, which means there's a reason, a legal reason, to excuse that juror, do you understand that?**

**Appellant: Yes, I do.**

**Trial Court: You are also giving up your right to what's called peremptory challenges. Those are the rights that you have to exclude four potential jurors simply for any reason you want that may not be a legal reason. It could be a gut, if you will, or simply a feeling that they're not going to be what you want –**

**Appellant: I understand.**

**Trial Court: -- Do you understand that?**

**Appellant: Yes, I do. I understand.**

**Trial Court: All right. Now, you do understand then that you would have an active participation [sic] of your lawyer in selecting a jury and that that will not occur if this jury waiver is signed and you acknowledge to me in open court today that you're waiving the jury.**

**Appellant: Yes, sir.**

**Trial Court: Do you understand that?**

**Appellant: Yes, I do.**

**Trial Court: Do you have any questions about what I just told you?**

**Appellant: No, your honor, I don't.**

**Trial Court: All right. This is such an important right that you must sign in open court a waiver of your right to a jury and also it gives you an opportunity to ask me or your lawyer any questions about the circumstances associated with waiving the jury that I**

**talked to you about. I will be the one that will make the decision in short; do you understand that?**

**Appellant: Yes, I do.**

**Trial Court: Okay. Now, I will say this, and I'm not trying to talk you into anything. There is an interesting issue in this case and more flexibility would be available if you go ahead and waive the right to a jury because, for example, I can ask the lawyers after I hear the evidence to brief the case and then make a decision after I study the legal aspects of it. If there were a jury trial we would not be in a position to be able to do that inasmuch as they'd be the finders of fact based on the law; do you understand that?**

**Appellant: Yes, I do, your honor.**

**Trial Court: Okay. If you wish to waive your right to a jury you're going to need to sign the waiver of jury form that's there in front of you. Again, if you have any question about what I said let me know.**

**Appellant: Thank you, your honor.**

**Trial Court: Thank you.**

**Trial Counsel: May I approach, your honor?**

**Trial Court: You may. Mr. Wrona, is this your signature on the form, sir?**

**Appellant: Yes, it is, your honor.**

**Trial Court: Do you have any questions about the form?**

**Appellant: Not at this time.**

**Trial Court: All right. The court will – and this is where you want to go today, what you want to do; is that correct?**

**Appellant: That's correct, your honor.**

> **Trial Court: All right. The court will indicate the Defendant, Dennis J. Wrona, has been advised of his rights to a jury and the circumstances associated with that waiver as it relates to the selection of jury. The court will indicate that he has waived his right to a jury.**

(Jury Waiver Hearing, 2/27/2017 Tr. at 6-11).

*Analysis*

{¶12} Accordingly, we will analyze the voluntary, knowing, and intelligent nature of Appellant's jury waiver, in turn.

*Voluntariness*

{¶13} A review of the record demonstrates that Appellant's jury waiver was voluntary. Specifically, Appellant executed a written jury waiver in open court after receiving an explanation of his constitutional rights by the trial court. (Doc. No. 56). Appellant's jury waiver states, in part:

> I, DENNIS J. WRONA, defendant in the above cause, hereby *voluntarily waive and relinquish my right to a trial by jury*, and elect to be tried by a Judge of the Court as to the charges contained in the Indictment. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury.

(Emphasis added). (*Id.*).

{¶14} Additionally, when the trial court inquired of Appellant if he had heard the representations of counsel (regarding whether the Appellant and counsel had discussed waiving a trial by jury) Appellant answered in the affirmative. As such, and relative to the issue of voluntariness, we determine that the advice of counsel is

a factor supporting a finding of voluntariness in this case. *See, State v. Bays,* 87 Ohio St.3d 15, 19, 1999-Ohio-216, 716 N.E.2d 1126.

{¶15} In our review, we find nothing in the record to demonstrate that Appellant's jury waiver was made involuntarily. Given the on-the-record exchange between the Appellant and the trial court; Appellant's written waiver of a jury; and Appellant's affirmance (that) he discussed his waiver with counsel, we find Appellant voluntarily waived his right to a jury.

*Knowing & Intelligent Waiver*

{¶16} "Because 'a waiver is the intentional relinquishment of a known right or privilege * * *, a defendant must have some knowledge of the nature of the jury trial right to make a valid waiver.'" *Osie,* 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 52 quoting *Bays,* 87 Ohio St.3d 15, 19-20, 1999-Ohio-216, 716 N.E.2d 1126. "However, 'there is no requirement for a trial court to interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial.'" *Id.* quoting *State v. Jells,* 53 Ohio St.3d 22, 559 N.E.2d 464 (1990), paragraph one of the syllabus. "'The Criminal Rules and the Revised Code are satisfied by a written waiver, signed by the defendant, filed with the court, and made in open court, after arraignment and opportunity to consult with counsel.'" *Id.* quoting *Jells,* 53 Ohio St.3d 22, 26, 559 N.E.2d 464 (1990).

{¶17} In our review of the record, we find that the trial court sufficiently explained the jury process to Appellant. Specifically, during the trial court's colloquy with the Appellant, the trial court repeatedly asked Appellant if he understood his right to a jury and the jury selection process. And, in response, Appellant consistently answered the trial court in the affirmative. At no time during the waiver hearing does the record reflect any apprehension or confusion by the Appellant as to waiving a jury trial. As such, "'[a] defendant is sufficiently informed to make an intelligent waiver if he was aware that a jury is composed of 12 members of the community, he may participate in the selection of the jurors, the verdict of the jury must be unanimous, and * * * a judge alone will decide guilt or innocence should he waive his jury trial right.'" *Id.* at ¶ 53 quoting *United States v. Martin,* 704 F.2d 267, 273 (6th Cir.1983). Accordingly, we find that Appellant has failed to demonstrate a plain showing that his jury waiver was not freely, knowingly, and intelligently made.

*Trial Court's refusal of jury instruction*

{¶18} Appellant argues that his jury waiver was not voluntarily made because the trial court refused to provide the requested jury instruction of self-defense. This argument is without merit. We note that the record demonstrates that Appellant *never requested* the trial court to instruct a jury on the defense of self-

defense.[2] Appellant's trial counsel admits as much on the record, informing the trial court that:

> **Trial Counsel: Your honor, in preparing, in reviewing the court's proposed jury instructions over the weekend * * *. We – I realized that there was a lack at that point of an instruction on self-defense, which is understandable because very frequently the self-defense instruction is discussed at the point where the state and the defense have rested because of the burden of the defense to establish at least some sort of prima facie case to argue self-defense. In preparing that myself I was somewhat shocked that the Ohio Jury Instructions do not seem to have any reference to the constitutional right of an individual to refuse medical treatment. I have a particular perspective that is not necessarily universally shared within the courtroom here that that instruction is relevant to self-defense in some cases and, in fact, found some ca – very limited case law authority where this may be an issue. As a result, the defense brought forward informally in chambers, not on the record, some discussions regarding proposed jury instructions * * *. I have relayed to Mr. Wrona my particular assessment of predicted likelihoods of whether we would or would not get an instruction, as well as the potential differences of how a jury versus the court would view certain legal questions, that sort of thing. And in light of that conversation and tactical choices Mr. Wrona and I are now of the opinion that this case would best be handled by presenting the facts to your honor.**

(Jury Waiver Hearing, 02/27/2017 Tr. at 2-4).

{¶19} Moreover, as the record clearly demonstrates, Appellant waived his right to a jury trial. Thus, Appellant's argument concerning the need for a jury trial

---

[2] While Appellant refers to his "Pretrial Statement Re: Self Defense and Refused Medical Treatment" in support of his self-defense jury instruction request, we note that the "Pretrial Statement" was filed after Appellant's bench trial had commenced, and furthermore, refers to discussions that occurred in-chambers and off the record. (*See* Doc. No. 51). Accordingly, without a record to review, we are unpersuaded by Appellant's characterization of his request.

instruction on self-defense, under the facts presented, is moot. Nevertheless, the record does demonstrate that the trial court *did consider self-defense but specifically found that Appellant failed to meet his burden and prove self-defense in this case*. (Trial, 2/28/2017 Tr. at 245).

**{¶20}** Accordingly, we overrule Appellant's first and second assignments of error.

### *Appellant's Third Assignment of Error*

**{¶21}** In his third assignment of error, Appellant argues that the conviction for assault was against the manifest weight of the evidence. For the reasons that follow, we disagree.

### *Standard of Review*

**{¶22}** "[I]n determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, 'weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. White,* 3rd Dist. Seneca No. 13-16-21, 2017-Ohio-1488, ¶ 11 quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and

the credibility of the witnesses. *Id.* citing *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "When applying the manifest weight standard, 'only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment.'" *Id.* quoting *State v. Haller,* 2012-Ohio-5233, 982 N.E.2d 111, ¶ 9.

*Analysis*

**{¶23}** In the case before us, the evidence offered by the prosecution against Appellant included the testimony of Pierce, Bishop, and Torres. Pierce testified that Appellant kicked her out of the back of the ambulance, causing her to land on her backside. Pierce also testified that Appellant hit her in the head with her mic, bit her on her left forearm, and tried to light her arm hairs on fire with his cigarette lighter. Pierce's testimony was corroborated by Bishop, through the photographs of her injuries, and medical records from St. Rita's Medical Center (that verified Pierce sought medical treatment after the assault). (State's Ex. Nos. 5-18).

**{¶24}** Bishop testified that when Pierce attempted to take Appellant's cigarette from him, Appellant became combative and kicked Pierce. Bishop further testified that she observed Appellant bite Pierce.

**{¶25}** Torres testified that he was dispatched to Bob Evans on May 29, 2016 to assist paramedics. Torres further testified that upon his arrival to the scene he observed Appellant with bloodshot, glassy eyes and identified an odor of alcohol

coming from his (Appellant's) breath. Torres opined that Appellant was intoxicated. While Torres did not observe the incident between Pierce and the Appellant, Torres assisted with taking photographs of Pierce at the scene and collecting two cigarette lighters from the ambulance.

{¶26} Another prosecution witness, Bob Evans employee Stacy Newland ("Newland"), testified that she called 911 after she observed a man (Appellant) laying in the grass. Newland testified that after the paramedics arrived, she saw the ambulance "shaking" and then saw a paramedic (Pierce) "fly" out the back of the ambulance, landing on her backside. Newland also testified that she observed Appellant being restrained and noticed that there were cigarettes and a lighter on the floor of the ambulance.

{¶27} In presenting his defense, Appellant testified that once in the ambulance, the paramedics closed its doors against his wishes. As a result of closing the doors, Appellant tried to leave the ambulance. And while attempting to leave, Pierce pushed him, which resulted in Appellant falling backwards onto the floor of the ambulance. Appellant further testified that while he was on the floor of the ambulance, Pierce came over to hold him down, at which point he began to "push" and "flail" in an attempt to get her off of him. Appellant testified that he pushed Pierce with such force that when she hit the closed ambulance door, it opened, and Pierce went through it, landing on her backside on the pavement.

**{¶28}** In this matter, the trial court, as the trier of fact, was in the best position to observe the demeanor of the witnesses and to hear their testimony. It was within the purview of the trial court to determine that the testimonies of Pierce, Bishop, and Torres were more credible than the testimony of the Appellant. Thus, because the State produced competent and credible evidence as to all the elements of assault, and the trial court was in the best position to assess the credibility of each witness, we cannot say that the guilty verdict of the trial court was against the manifest weight of the evidence. Moreover, the trial court, while taking into account the witnesses' manner and demeanor, had the prerogative to weigh the credibility and the weight of testimony in light of Appellant avoiding any jail time or possible reductions in his prison time as a result of testifying. *See, State v. Kelly,* 10th Dist. Franklin No. 02AP-195, 2002-Ohio-5797, ¶ 18. Accordingly, Appellant's third assignment of error is overruled.

**{¶29}** Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we overrule Appellant's first, second, and third assignments of error and affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**